**BELL ATLANTIC–VIRGINIA, INC., Plaintiff,**

v.

**WORLDCOM TECHNOLOGIES OF VIRGINIA, INC., Defendant.**

No. 99–275–A.

United States District Court, E.D. Virginia, Alexandria Division.

July 1, 1999.

---

Richard Cyril Sullivan, Jr., Alexandira, VA, for plaintiff.

Susan Rebecca Podolsky, Jenner & Block, Washington, DC, for defendant.

### MEMORANDUM OPINION AND ORDER

LEE, District Judge.

THIS MATTER comes before the Court on Defendant WorldCom Technologies of Virginia, Inc.'s ("WorldCom") Motion to Dismiss for lack of subject matter jurisdiction. Plaintiff Bell Atlantic–Virginia, Inc.'s ("Bell Atlantic") Motion for Partial Summary Judgment is also before the Court. Plaintiff and Defendant are competing carriers who have entered an Interconnection Agreement ("Agreement") pursuant to the Telecommunications Act of 1996, Pub.L. No. 104–104, 110 Stat. 56 (1996) (codified as amended in scattered sections of Title 47 of the United States Code). Essentially, the parties dispute whether local calls

to Internet Service Providers ("ISPs")[1] constitute local traffic and are subject to reciprocal compensation under the terms of their Agreement. Bell Atlantic originally filed a complaint against WorldCom for breach of contract and unjust enrichment, and also seeking a declaratory judgment ruling that it is not liable for reciprocal compensation charges on Internet calls. For the reasons stated below, the Court grants Defendant's Motion to Dismiss, and denies Plaintiff's Motion for Partial Summary Judgment, as moot.

### I. Facts and Background

Plaintiff Bell Atlantic and Defendant WorldCom[2] are telephone companies that provide competing local telephone service in Virginia. The Telecommunications Act of 1996 ("the Act") requires competing carriers to interconnect their networks to enable customers of one network to call customers of another. 47 U.S.C. § 251 (1994, Supp. II 1996). The Act imposes certain obligations on all local exchange carriers and requires them to enter interconnection agreements. *Id.* § 251(b), (c).

Pursuant to § 251(b)(5), competing local telephone companies must make arrangements to pay each other reciprocal compensation for telecommunications. As stated in the regulations, reciprocal compensation only applies to "local telecommunications traffic," or local calls. 47 C.F.R. § 51.701(a) (1998). Local telecommunications traffic is defined as traffic that "originates and terminates within a local service area established by the state commission." *Id.* § 51.701(b)(1). Simply stated, local calls are calls that originate on one carrier's network and terminate on the other carrier's network, but are within the same local calling area. The two carriers must assist each other in delivering the calls.

The Act requires the caller's local carrier to compensate the other carrier whose facilities are used to complete the local call. Reciprocal compensation is the "arrangement between two carriers ... in which each of the two carriers receives compensation from the other carrier for the transport and termination on each carrier's network facilities of local telecommunications traffic that originates on the network facilities of the other carrier." *Id.* § 51.701(e). The reciprocal compensation arrangements for local calls are given effect through the interconnection agreements between the competing carriers.

Pursuant to § 252 of the Act, interconnection agreements can be arrived at through negotiation or arbitration. Any interconnection agreement adopted by negotiation or arbitration must be submitted for approval to the state commission. *Id.* § 252(e).

In July 1996, Bell Atlantic and WorldCom entered their Agreement based on voluntary negotiations. In October, the Virginia State Corporation Commission ("Virginia Commission") approved the Agreement. Under the terms of the Agreement, Bell Atlantic and WorldCom expressly agreed to pay each other reciprocal compensation for local traffic. *See Agreement,* § 5.7. The Agreement defines "local traffic" as "traffic that is originated by a Customer of one Party on that Party's network and terminates to a Customer of the other Party on that Party's network, within a given local calling area...." *Id.* § 1.44.

WorldCom charged Bell Atlantic for carrying Internet calls originated by Bell Atlantic customers and handed off to WorldCom ISP customers as local calls subject to reciprocal compensation. ISPs provide

---

**1.** ISPs are entities which provide their users the ability to access online information over the Internet by communicating with web sites. *Illinois Bell Tel. Co. v. WorldCom Tech., Inc.,* No. 98 C 1925, 1998 WL 419493, at *19 (N.D.Ill. July 23, 1998), *aff'd,* 179 F.3d 566 (7th Cir.1999). Internet access enables sub-

scribers to use electronic mail, file transfers, and Internet Relay Chat, as well as to browse and publish on the World Wide Web. *Id.*

**2.** WorldCom was formerly MFS Intelenet of Virginia, Inc.

Internet connections through the telephone network. *Illinois Bell v. Worldcom Tech.*, 179 F.3d 566, 570 (7th Cir.1999). ISPs are assigned local telephone numbers. The telephone companies bill customers for local calls when they call ISPs within the local calling area. *Id.* However, the ultimate connections are web sites. Generally, the web sites are located outside of the local calling area in distant locations. *Id.*

To date, Bell Atlantic has paid reciprocal compensation for ISP calls. However, Bell Atlantic claims that WorldCom violated federal law by collecting "reciprocal compensation" for delivering Internet calls from Bell Atlantic customers to WorldCom ISP customers. In this present action, Bell Atlantic sues WorldCom to recover sums paid for these Internet calls on the theories of breach of contract (Count II) and unjust enrichment (Count III). Additionally, in Count I, Bell Atlantic seeks a declaratory judgment ruling that it was not liable to WorldCom for reciprocal compensation charges on Internet calls. Bell Atlantic requests partial summary judgment on the declaratory relief and as to liability on its breach of contract claim.

WorldCom moves to dismiss the complaint on two grounds. First, WorldCom contends that the Court lacks jurisdiction over the subject matter until the Virginia Commission addresses the issue. Second, WorldCom contends that Bell Atlantic fails to state a claim because it voluntarily paid the reciprocal compensation.

## II. Subject Matter Jurisdiction

Primarily, the Court must address Defendant's Motion to Dismiss for lack of subject matter jurisdiction. The issues presented are: 1) whether § 252(e)(6) of the Act applies in this case and divests the Court of its federal question jurisdiction until determinations are first made by the Virginia Commission; and 2) whether the terms of the parties' Agreement subject their dispute to judicial review.

### A. Standard of Review

Pursuant to Federal Rule Civil Procedure 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. The burden in proving subject matter jurisdiction is on the plaintiff. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991). Where subject matter jurisdiction is challenged, the factual allegations are assumed true. *Virginia v. United States*, 926 F.Supp. 537, 540 (E.D.Va.1995). The court may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists. *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

### B. The Scope of § 252(e)(6)

█ Pursuant to 28 U.S.C. § 1331, district courts have original jurisdiction over all cases arising under the Constitution, laws or treaties of the United States. Section 1331 serves as a general federal question statute and gives district courts original jurisdiction over federally created causes of action unless a specific statute assigns jurisdiction elsewhere. *Molinary v. Powell Mountain Coal Co.*, 125 F.3d 231, 235 (4th Cir.1997). Thus, the Court has jurisdiction unless a statute specifically vests jurisdiction in another entity.

In the present case, the Agreement between the parties was entered into pursuant to sections 251 and 252 of the Act. Initially, the parties dispute whether the Court's jurisdiction arises generally under 28 U.S.C. § 1331 or under § 252 of the Act. In pertinent part, § 252(e)(6) provides:

> In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

WorldCom contends that § 252(e)(6) of the Act specifically assigns jurisdiction of issues related to interconnection agreements to state commissions, and in this case, the Virginia Commission. Under § 252(e)(6), WorldCom argues that the district court's jurisdiction attaches only to review the state commission's determination. Furthermore, WorldCom relies on the Federal Communication Commission's (FCC) Declaratory Ruling. According to WorldCom, the FCC Declaratory Ruling stated that, in the absence of any contrary federal law, the issue of reciprocal compensation for calls to ISPs depends on the terms of the parties' interconnection agreements, as interpreted by the expert state agencies. Relying on several decisions from other jurisdictions, WorldCom submits that this Court lacks jurisdiction over the case because Bell Atlantic was required to raise its claims first with the Virginia Commission. *Indiana Bell Tel. Co. v. McCarty,* 30 F.Supp.2d 1100, 1104 (S.D.Ind.1998); *AT & T Communications of Ohio, Inc. v. Ohio Bell Tel. Co.,* 29 F.Supp.2d 855, 855–56 (S.D.Ohio 1998); *AT&T Communications of Illinois v. Illinois Bell Tel. Co.,* No. 97 C 0886, 1998 WL 525437, at *4–5 (N.D.Ill. Aug.18, 1998).

Bell Atlantic contends that federal courts have jurisdiction over claims arising from interconnection agreements because the agreements are the law, not mere contracts. *MCI Telecommunications Corp. v. Garden State Inv. Corp.,* 981 F.2d 385, 387 (8th Cir.1992). According to Bell Atlantic, nothing in the Act strips the Court of its federal question jurisdiction. Bell Atlantic contends that § 252(e)(6) provides for review of determinations made by state commissions in rejecting or approving interconnection agreements, at the time of creation. Thus, Bell Atlantic argues that § 252(e)(6) does not apply as the Agreement was beyond the approval stages and into performance. According to Bell Atlantic, it seeks relief for breach of the Agreement. Furthermore, Bell Atlantic contends that it seeks damages, which state commissions do not have the authority to award. Va.Code Ann. § 12.1–13 (Michie 1993). Thus, Bell Atlantic submits that any enforcement jurisdiction that state commissions have does not extend to Bell Atlantic's claims.

Concerning the FCC Declaratory Ruling, Bell Atlantic responds that nothing in the ruling precludes its claims. According to Bell Atlantic, the FCC only said that it would be up to the state commissions to determine in the first instance the effect of the FCC's ruling on their own prior decisions concerning reciprocal compensation for Internet traffic.

■ Although Bell Atlantic asserts jurisdiction under 28 U.S.C. § 1331, this Court finds that its jurisdictional analysis is limited to the Telecommunications Act. The Supreme Court dictates that where Congress provides a specific and adequate means to seek review of an agency determination, alternative means of review are inapplicable. *Califano v. Sanders,* 430 U.S. 99, 108–09, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) (holding that federal question jurisdiction was precluded by a section of the Social Security Act). *See also Southwestern Bell Tel. Co. v. McKee,* No. 97–2197–EEO, 1997 WL 450041, at *4 (D.Kan. July 15, 1997) (noting that *Califano* has been applied in the context of judicial review of the state commission's findings under the Act). In *Indiana Bell,* the Court expressly rejected the § 1331 argument. 30 F.Supp.2d at 1103 n. 2 (finding that the court's jurisdictional analysis was limited to the Telecommunications Act notwithstanding the party's reliance on 28 U.S.C. §§ 1331, 1337, 2201, and 2202); *see also GTE North Inc. v. Strand,* No. 5:97–CV–01, 1997 WL 811422, at *4 (W.D.Mich. June 2, 1997) (refusing to assert jurisdiction under § 1331); *GTE Northwest, Inc. v. Nelson,* 969 F.Supp. 654, 656 (W.D.Wash.1997) (finding that under § 252 the district court lacked jurisdiction regarding objections to an agreement submitted to a state commission and that § 1331 was inapplicable).

■ Under § 252, jurisdiction exists when: 1) the claim regards a state commission determination; 2) the claimant is an aggrieved party; and 3) the claimant seeks review of whether a statement or an agreement between an interconnecting service provider and local exchange carrier satisfies requirements of sections 251 and 252. *Indiana Bell*, 30 F.Supp.2d at 1103.

In *Indiana Bell*, the district court held that it lacked jurisdiction to review counterclaims concerning the interpretation of negotiated agreement terms because they had not been raised before the state commission. Pursuant to § 252(e)(6) of the Act, the plaintiff sought review of several of the state commission's arbitration determinations. *Id.* at 1102. During the same time, a disagreement arose regarding the interpretation of various terms, which had previously been negotiated and agreed upon by the parties. *Id.* Despite the fact that the parties could have returned to the state commission and the parties had an arbitration clause in the agreement, the defendant filed a counterclaim seeking a declaratory ruling that its interpretation of those terms was correct. *Id.*

The plaintiff argued that § 252(e)(6) did not apply because the claims did not regard a "determination" made by the commission. *Id.* at 1103. Defendant contended that the commission's approval of the parties' agreement, which included approving of the contract language at issue, constituted a "determination" under the section. *Id.* Plaintiff countered that approving negotiated contract language was not a determination as the Act mandated that the commission approve negotiated contract terms if they complied with a specific statutory requirement. *Id.*

While acknowledging that the commission made a determination when it approved the agreement and thus brought the jurisdictional analysis under § 252, the *Indiana Bell* court explicitly found that the proper interpretation of the negotiated terms had not been determined by the commission. *Id.* at 1104. In support of its

decision, the court noted that the goal of the Act was to permit the state commission to make the first determination of issues prior to any judicial review. *Id.* Other district courts have also noted that the statutory scheme of the Telecommunications Act does not permit judicial review of disputes arising out of interconnection agreements not previously subject to action by a state commission. *See, e.g., AT & T Communications of Ohio*, 29 F.Supp.2d at 856–57 (holding that the district court lacked subject matter jurisdiction under the Telecommunications Act where there was no determination of the issue by the state commission); *see also AT & T Communications of Illinois*, 1998 WL 525437, at *4–5.

In *AT & T Communications of Illinois*, the court noted that the state commission made a "determination" regarding negotiated contract terms when it approved the agreement. *Id.* Thus, section 252 governed the court's jurisdictional analysis. However, the court stated that the commission did not make a determination regarding the interpretation of the agreement terms. *Id.* Thus, as to interpretation, the court lacked subject matter jurisdiction. *Id.* at *5.

■ Several parties throughout the country have litigated the issue of whether calls to ISPs require reciprocal compensation. Repeatedly, those cases have first been presented to the governing state commissions. *See, e.g., Illinois Bell*, 179 F.3d 566 (7th Cir.1999); *U S West Communications, Inc. v. Worldcom Tech., Inc.*, 31 F.Supp.2d 819 (D.Or.1998); *U.S. West Communications, Inc. v. MFS Intelenet, Inc.*, No. C97–222WD, 1998 WL 350588 (W.D.Wash. Jan.7, 1998). In fact, in another case, Bell Atlantic presented the identical issue concerning ISPs and reciprocal compensation to the Virginia Commission. *Final Order, Petition of Cox Virginia Telcom, Inc.*, Case No. PUC970069 (Va. State Corp. Comm'n Oct. 24, 1997) (finding that ISPs are included for reciprocal compensation).

In this case, Bell Atlantic seeks to determine whether ISPs constitute reciprocal compensation under the terms of the parties' Agreement. Although this dispute does not involve terms arbitrated before the Virginia Commission, the Virginia Commission did make a determination regarding the agreement when it was approved. Thus, the Court finds that § 252 applies. However, the Virginia Commission did not make a determination regarding the interpretation of the claims. This Court finds that the Telecommunications Act was designed to allow the state commission to make the first determination. *See Indiana Bell,* 30 F.Supp.2d at 1104. Circumventing the state commission's initial review undermines the review process established by Congress in the Telecommunications Act. For those reasons, the Court holds that it lacks subject matter jurisdiction over this dispute until the Virginia Commission makes an initial determination.

### C. The Agreement and Jurisdiction

The parties further dispute whether the Agreement specifically provides for judicial review of disputes. Section 29.9 of the Agreement states:

> **Dispute Resolution.** Any dispute between the Parties regarding the *interpretation or enforcement* of this Agreement or any of its terms shall be addressed by good faith negotiation between the Parties, in the first instance. Should such negotiations fail to resolve the dispute in a reasonable time, *either Party may initiate an appropriate action in any regulatory or judicial forum of competent jurisdiction.*

(Emphasis added). Based on this language, Bell Atlantic contends that the parties bargained for judicial review of this dispute.[3] However, this Court finds that the parties cannot contract for judicial re-

view in direct contravention to the Telecommunications Act. *Accord AT & T Communications of Ohio,* 29 F.Supp.2d at 856–57 (finding that the Court lacked jurisdiction to decide counts not presented to the state commission despite parties' contractual dispute resolution provision in the Interconnection Agreement). Thus, as this Court presently lacks jurisdiction, Bell Atlantic has not initiated an action in a forum of "competent jurisdiction" as indicated in the Agreement.

As this Court lacks jurisdiction, it is not necessary to address Defendant's alternative grounds for dismissal nor Plaintiff's Motion for Partial Summary Judgment.

### Conclusion

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED. Plaintiff's Motion for Partial Summary Judgment is DENIED, AS MOOT.

---

3. Alternatively, WorldCom contends that the present dispute is a billing dispute governed by section 29.8 of the Agreement, which requires that the parties follow certain procedures, including arbitration.